FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 05, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TOWNSEND RANCH LLC, a Washington limited liability corporation; ESTATE OF DAVID TOWNSEND; EDWARD TOWNSEND; DANIEL TOWNSEND; WILLIAM TOWNSEND; NATHAN TOWNSEND; MALCOM and KELLY TOWNSEND, husband and wife; TOWNSEND BROTHERS LLC, a Washington limited liability corporation; T3 RANCH LLC, a Washington limited liability corporation; and SWEDE W. ALBERT, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, acting by and through the DEPARTMENT OF THE INTERIOR and BUREAU OF INDIAN AFFAIRS,<br><br>Defendant. | NO. 2:23-CV-0170-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 1

BEFORE THE COURT is Defendant's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(h)(3) (ECF No. 26). The matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's Motion to Dismiss (ECF No. 26) is **GRANTED**.

## BACKGROUND

This motion to dismiss arises out of a fire that destroyed Plaintiffs' real property in Okanogan County, Washington. ECF No. 6 at 7-8, ¶¶ 4.2-4.4.

Plaintiffs' property is located near the Omak Mill. ECF No. 35-1 at 4. The Colville Tribal Federal Corporation (CTFC) has owned the Mill in fee simple since 2013. ECF Nos. 6 at 5, ¶ 2.17; 27-6 at 2. The CTFC is the business arm of the Confederated Tribes and Bands of the Colville Reservation (Confederated Tribes). ECF Nos. 6 at 5, ¶ 2.16; 26 at 2. The CTFC pays property taxes on the Mill, a portion of which goes to Okanogan County Fire District No. 3 (District 3). ECF Nos. 27-7; 27-10 at 2. In July 2018, District 3 and the Bureau of Indian Affairs (BIA) executed a Cooperative Fire Protection Agreement. ECF No. 27-11. The purpose of the Agreement was "to provide for mutual assistance and cooperation in the . . . suppression of wildland fire to lands within the jurisdiction" of BIA or District 3. *Id.* at 2. However, the Agreement also allocates sole jurisdiction over certain lands to the parties. *Id.* at 2, ¶ 3. Importantly, District 3 has sole

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 2

jurisdiction over "lands within the boundaries of the Fire District [which are] subject to [the] Fire District 3 protection district levy and not subject to Forest Fire Protection Assessment." *Id.* at 2, ¶ 3.01.  When a fire emergency occurs on property under the exclusive jurisdiction of District 3, BIA Fire Management may "provide immediate control action" and "minimize fire loss," or "provide supplemental resources . . . or support." *Id.* at 3, ¶ 4.01.

Plaintiffs claim that on September 7, 2020, a fire from the Mill spread southward and destroyed their property.  ECF No. 6 at 9-10, ¶¶ 4.9-4.11; 31 at 5.  According to Plaintiffs, the Mill site "contained one or more burn piles of forest and timber scrap (a.k.a 'slash')" which had been left smoldering by tribal employees and eventually "flared up, resulting in the wildfire" due to high winds.  ECF No. 6 at 2, ¶ 1.1; *see id.* at 9, ¶ 4.9.  Plaintiffs allege that city officials warned CTFC and BIA on multiple occasions that the smoldering slash pile presented a risk of wildfire but "no measure of any type was made to prevent the wildfire that occurred." *Id.* at 12, ¶¶ 4.20-4.21.

Defendant alleges that the fire that burned Plaintiffs' property was not due to high winds rekindling the smoldering pile at the mill, but instead due to a different fire, known as the "Cold Springs Fire" or "Pearl Hill Fire", which was started by an arsonist a day earlier, on September 6, 2020, and eventually spread to the Mill, where it combined with the smoldering slash pile to create a bigger fire that

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 3

destroyed Plaintiffs' property.  ECF No. 26 at 6.  Plaintiffs dispute this.  ECF No. 31 at 3.

The parties appear to agree that slash pile was smoldering in the first instance due to a fire that began several months earlier, on July 18, 2020, known as the "Rodeo Trail Fire."  ECF Nos. 26 at 4; 32 at 4, ¶ 10.  The Rodeo Trail Fire was started by a group of squatters and necessitated a multi-jurisdictional response by District 3, the Washington State Department of Natural Resources, and the Colville Agency Mount Tolman Fire Center (Mount Tolman), which is managed by the BIA.  ECF Nos. 26 at 5-6; 31 at 12.  Pursuant to the Cooperative Fire Protection Agreement, District 3 responded to the Rodeo Trail Fire and later requested mutual aid.  ECF No. 32 at 2, ¶ 4.  Mount Tolman assisted with mopping up the fire at District 3's request.  ECF Nos. 27-1 at 2; 32 at 3, ¶¶ 5-6.

Plaintiffs filed their second amended complaint (SAC) with this Court on August 11, 2023, bringing claims against the BIA for negligence, trespass, nuisance, and inverse condemnation.  ECF No. 6 at 13-15.  Plaintiffs seek recompense in the amount of $47 million dollars.  *Id.* at 19.

The SAC asserts that this Court has subject matter jurisdiction over this action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), and the Indian Self-Determination and Education Assistance Act (ISDEAA), Pub. L. No. 93-638.  Under the ISDEAA, tribes "receiving a particular service from the

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 4

BIA may submit a contract proposal to the BIA to take over the program and operate it as a contractor and receive the money that the BIA would have otherwise spent on the program." *Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1033 (9th Cir. 2013). "These contracts are known as 638 contracts, after the Public Law that created them." *Id.*

Plaintiffs allege that Defendant was acting pursuant to two different 638 contracts at the time of their property loss: contract A20AV00089, or the "Cooperative Forest Management Program" contract; and contract A20AV00075, or the "Fire Protection Services Program" contract. ECF Nos. 27-8; 27-9. Plaintiffs argue that these agreements make Defendant liable for the alleged negligence of tribal employees in failing to suppress the smoldering fire at the Mill before it grew into a wildfire. ECF No. 6 at 6, ¶ 2.19 (citing 25 U.S.C. § 5321). Defendant moves to dismiss Plaintiff's claims, alleging the actions in issue were not performed under either of the 638 contracts. ECF No. 26 at 2.

## DISCUSSION

### I. Motion to Dismiss Standard

A jurisdictional challenge brought under Rule 12(b)(1) may present as either a facial or factual attack. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 5

in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Defendant raises a factual challenge to the Court's jurisdiction, arguing that the 638 contracts do not cover the conduct in issue. ECF No. 26 at 11. Defendant brings copies of the 638 contracts as well as the tax and sales history of the Mill parcel as evidence. In resolving a factual attack, a court "need not presume the truthfulness of the plaintiffs' allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242. Thus, "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Anderson v. United States*, 606 F. Supp. 3d 1040, 1050 (E.D. Wash. 2022) (quoting *Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co. Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015)). However, "a jurisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Safe Air*, 373 F.3d at 1039 (quoting *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983)) (brackets omitted). "The question of jurisdiction and the merits of an action are intertwined 'where a statute provides the basis for both the subject

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 6

matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" *Id.* (quoting *Sun Valley*, 738 F.2d at 139)).

"'Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)); *see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ("It is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]") (internal citations omitted). The action must be dismissed if a court finds it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

## II.   FTCA & ISDEAA Standard

The United States and its agencies are generally immune from suits seeking money damages; however, Congress may choose to waive that immunity. *Dep't of Agric. Rural Dev. Rural Housing Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). Under the Federal Tort Claims Act (FTCA), Congress has waived the federal government's sovereign immunity from suit for tort claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a

private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  In 1990, Congress extended the FTCA's waiver of sovereign immunity to claims "'resulting from the performance of functions . . . under a contract . . . authorized by the ISDEAA.'" *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1003 (9th Cir. 2014) (quoting 25 U.S.C. § 450 (note)).  However, that waiver is necessarily circumscribed.  To establish governmental liability for the acts of a tribal employee, the plaintiff must establish that (1) "the language of the federal contract 'encompass[es] the activity that the plaintiff ascribes to the employee'" and (2) "the employee's activity [fell] 'within the scope of employment.'" *Wilson v. Horton's Towing*, 906 F.3d 773, 781 (9th Cir. 2018) (quoting *Shirk*, 773 F.3d at 1006-7).  "The Supreme Court has characterized [tribal] immunity as a necessary corollary to Indian sovereignty and self-governance, and [the courts] employ a strong presumption against its waiver." *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1016 (9th Cir. 2016).

### III. Defendant's Motion to Dismiss

#### A. Intertwinement

Plaintiffs submit that the question of subject matter jurisdiction is so intertwined with the merits of the case that dismissal would be inappropriate at this stage.  Specifically, Plaintiffs contend that "it would be inappropriate for this Court

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 8

to determine whether the source of the damage to Plaintiffs' property was the fire that originated at the old Omak Mill site, as alleged in the [SAC]" or if the source was instead "the Rodeo Trail Fire and/or the Cold Springs Fire described in . . . Defendant's motion to dismiss." ECF No. 31 at 3. In support of this contention, Plaintiffs point to *Munger v. United States Soc. Sec. Admin.*, C19-5571TSZ, 2020 WL 6874792 (W.D. Wash. Nov. 23, 2020).

Although the decisions of another federal district court may carry some persuasive value, this Court is not bound by such authority. Even if it were, however, *Munger* is distinguishable. In *Munger*, the plaintiff was paralyzed after tripping over a door mat in the vestibule outside the Social Security Administration's (SSA's) office. 2020 WL 6874792 at *1. The SSA maintained that it was not responsible for the mat, which had been placed there by the property owner and which, under the lease agreement, the property company was allegedly responsible for maintaining. *Id.* Plaintiff disputed this, contending that "the United States owned, or . . . its employee placed or otherwise factually controlled the allegedly defective mat." *Id.* at *4. The court agreed that it could not resolve this factual issue in the context of a Rule 12(b)(1) jurisdictional challenge because the dispute went "to the substantive merits of [Plaintiff's] FTCA claim." *Id.*

Here, by contrast, the Court can resolve the jurisdictional issue—whether the 638 contracts imposed a duty on tribal employees to "safely inspect, maintain, and

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 9

monitor the smoldering slash pile" at the Mill, as alleged in the SAC, *see* ECF No. 6 at 8, ¶ 4.7—without reaching the substantive question on the merits of whether the smoldering slash pile spontaneously combusted due to high winds or the embers of the pile were kindled by the Cold Springs Fire on September 6, *see* ECF No. 26 at 2-3. Therefore, the Court declines to reserve ruling on Defendant's jurisdictional challenge.

### B.    638 Contracts

As a threshold matter, Plaintiffs' claims are deficient because they have not shown that CTFC, which owns the Mill in fee simple, ever contracted with BIA to administer any sort of program through a 638 contract on BIA's behalf. However, even if the Court were to proceed to step one of the *Shirk* analysis, Plaintiffs' claims would likewise fail because the contracts do not require tribal employees to protect property at the Mill against wildfires.

Defendant has submitted copies of the Forest Management Program contract and Fire Protection Services contract. *See* ECF Nos. 27-8; 27-9. The only parties to those agreements are the BIA and Confederated Tribes. CTFC was not mentioned in either document. A tribally chartered entity like CTFC may enter into a 638 contract, and the parties appear to agree that CTFC, as the business arm of the Confederated Tribes, is entitled to sovereign immunity. *See Demontiney v. United States ex rel. Dep't of Interior, Bureau of Indian Affs.*, 255 F.3d 801, 807-8

(9th Cir. 2001); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006) ("[Sovereign] immunity extends to business activities of the tribe, not merely to governmental activities."). Given CTFC's status as owner of the Mill property, the Court would expect to see CTFC mentioned in either the 638 contracts or some related subcontract between the Confederated Tribes and CTFC.

Second, and more fundamentally, Plaintiffs have not shown that the Mill land was ever held in trust by BIA for the Confederated Tribes. As it stands, CTFC owns the land in fee simple. *See* ECF Nos. 27-6; 27-7. CTFC's predecessor entity, the Colville Tribal Enterprises Corporation, purchased the property from the bankruptcy estate of a private business in 2001, then transferred the property to the Confederated Tribes in 2012, which in turn transferred the property back to CTFC in 2013. ECF No. 27-6 at 2. Likewise, tax records confirm that the property is under the jurisdiction of Okanogan County Fire District 3. ECF No. 27-12 at 2-3. In other words, BIA has never held the land in trust to administer a program on behalf of the Confederated Tribes. As such, Plaintiffs cannot show that the Tribes or CTFC assumed any responsibility from the BIA in managing the land or operations at the Mill. *See Los Coyotes*, 729 F.3d at 1033 (confirming the ISDEAA "created a system by which tribes could take over the administration of programs operated by the BIA").

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 11

Even if the Court could theoretically overlook these barriers to jurisdiction, Plaintiffs have not met their burden under step one of the *Shirk* analysis to show that language in either 638 contract is tethered to the maintenance and protection of the Mill.

Both 638 contracts include an appendix titled "Scope of Work," which lays out the responsibilities of the tribal contractor. ECF No. 27-8 at 9 ("The Contractor agrees to administer the program . . . in conformity with the following standards[ ] [i]dentified in the Scope of Work."). The Court begins by examining the Forest Management contract's Scope of Work section. In broad terms, the program envisions that the contractor will serve as a policymaker and advisor to the Colville Reservation regarding the appraisal/sale of timber, forest resource management, and forest health and protection. *See id.* at 31-33.

Plaintiffs urge the Court to find that the objectives of the Forest Management program are broader than mere "oversight of forested land," ECF No. 31 at 9, and in particular that the contractor's responsibility to "provide corrective action to forest stands impacted by wildfire", ECF No. 27-8 at 32, implicated a duty on behalf of the Confederated Tribes to suppress the smoldering of the slash pile at the Mill. Plaintiffs concede that the Mill was not being used to process timber or manufacture wood products at the time of the fire. ECF Nos. 31 at 5-7.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 12

Plaintiffs' arguments are unavailing. The fact that the Forest Management contract includes a general mandate to the Confederated Tribes to maintain and protect forestland does not necessarily implicate a specific duty to protect the privately held and developed Mill property. Further, the Cooperative Fire Protection Agreement between District 3 and the BIA confirms that District 3 was responsible for suppressing the remaining smoldering fire at the Mill's slash piles. *See* ECF No. 27-11 at 2 (providing that District 3 has sole jurisdiction over lands within the boundaries of the fire district, whereas BIA has sole jurisdiction over trust land). As mentioned, the Mill is subject to a District 3 fire protection tax and has not historically been held in trust for the Confederated Tribes.

Plaintiff Edward Townsend declared that Mount Tolman, a BIA-managed fire center, assumed responsibility for responding to the Rodeo Trail Fire "and subsequent rekindles of the fire" after an initial response by District 3 and conference between District 3 and Mount Tolman. ECF No. 32 at 3-4. This does not prove that the Mill was under the exclusive jurisdiction of the BIA. Indeed, Mr. Townsend's declaration admits that "subsequent rekindles of fire" were initially tackled by fire districts and only then handed over to Mount Tolman "for mop up and extended monitoring." *Id.* at 4, ¶ 9. The fact that the Mill was under District 3's sole jurisdiction did not prevent Mount Tolman from assisting with mop ups. The Cooperative Fire Protection Agreement specifically contemplates

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 13

1   that District 3 will respond to a fire emergency in a sole District 3 jurisdiction, but

2   that BIA fire management may respond as well to "provide immediate control

3   action, minimize fire loss, and thereby indirectly protect its own jurisdiction area."

4   *Id.* at 3, ¶ 4.02; *see also id.* at ¶ 5.02 (noting District 3 may request the support and

5   assistance of BIA). Therefore, the fact the Mount Tolman offered its fire

6   protection services to District 3 in responding to the Rodeo Springs Fire did not

7   bring CTFC's maintenance of the Mill within the scope of the 638 contract for

8   forest management services.

9        Respecting the Fire Protection contract, Plaintiffs' claims likewise fail. The

10   Fire Protection agreement specifies that the Confederated Tribes will "provid[e]

11   essential firefighting and fire protection services within the respective

12   jurisdictional boundaries of each party – the Tribal Emergency Management

13   Services and the city of Nespelem." ECF No. 27-9 at 30. The Court takes judicial

14   notice that the city of Omak, where the Mill is located, is outside the town of

15   Nespelem. Fed. R. Evid. 201(b). Accordingly, neither 638 contract supports the

16   Court's exercise of subject matter jurisdiction over this action.

17       **C.**    **Extra-Judicial Discovery**

18        Plaintiffs ask the Court for permission to engage in further jurisdictional

19   discovery before dismissing the action. ECF No. 31 at 4. Specifically, Plaintiffs

20   aver that "recent news reports suggest that at least part of the Old Omak Mill site is

dedicated to a new health care facility to be operated as a joint venture between the Confederated Tribes and Defendant" and that "[t]his sounds very much like a 638 contract . . . which was contemplated even at the time of the fire, begging the question whether the site was trust land owned by the Confederated Tribes." *Id.* at 7-8.

The Court will not allow Plaintiffs to engage in further jurisdictional discovery. If there was such a 638 contract between the tribes and BIA providing for health services on Mill land existing at the time of the fire, the Court anticipates the parties would have produced it by now. And unlike the Fire Protection contract, which could conceivably implicate some nexus between the alleged tribal employees' activity—i.e., monitoring of the slash pile for potential rekindling—and the scope of the contract—i.e., protecting against wildfires—it is unclear how a contract for operating a health services facility would superimpose a duty on tribal employees to monitor piles of timber byproducts.

Additionally, the evidence which Plaintiffs produce does not establish beyond mere conjecture that a 638 contract for health services even might have existed at the time of the fire. The newspaper articles which Plaintiffs submit as evidence that BIA was contracting with the Confederated Tribes to build a healthcare facility were published on October 19, 2023—over three years after the fire of September 7, 2020, that destroyed their property. *See* ECF Nos. 33-5; 33-6

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 15

1  at 3 (noting "[t]he project is nine years in the making").  These documents only

2  confirm that a 638 contract was not in place for the Mill at the relevant times.

3  Accordingly, the Court declines to permit further jurisdictional discovery.

4  **ACCORDINGLY, IT IS HEREBY ORDERED:**

5      Defendant's Motion to Dismiss (ECF No. 26) is **GRANTED**.  Plaintiff's

6  Second Amended Complaint (ECF No. 6) is **DISMISSED WITH PREJUDICE**.

7  The District Court Executive is directed to enter this Order, and Judgment

8  accordingly, furnish copies to counsel, and **CLOSE** the file.

9      DATED June 5, 2024.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 16